UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X
JEAN ROMEO, individually and as the
Administratrix of the Estate of John
Prodan, and the ESTATE OF JOHN PRODAN,
on behalf of the decedent, JOHN PRODAN,

                Plaintiffs,

       -against-

AID TO THE DEVELOPMENTALLY DISABLED, INC.;
BOARD OF DIRECTORS, Aid to the
Developmentally Disabled, Inc.; INDIVIDUAL
GROUP HOME LIVING PROGRAM, INC.; BOARD OF
DIRECTORS, Individual Group Home Living
Program, Inc.; DONALD REIB, individually      MEMORANDUM & ORDER
and in his capacity as Executive Director,    11-CV-6340(JS)(GRB)
Aid to the Developmentally Disabled;
SALLYANN BURGESS, individually and in her
capacity as Quality Assurance Officer,
Aid to the Developmentally Disabled;
STACEY ROHDE, individually and in her
capacity as Resident Manager, Aid to the
Developmentally Disabled; PAULA WANAT,
individually and in her capacity as
Program Director, QMRP, Aid to the
Developmentally Disabled; STEPHANIE
BOLOGNESE, Nursing Coordinator, Aid to
the Developmentally Disabled; JAMES
PHILIPS, individually and in his capacity
as Direct Care Counselor, Aid to the
Developmentally Disabled; MARGARET PROKOP
R.N., individually and in her capacity as
Registered Nurse, Aid to the Developmentally
Disabled; WALTER STOCKTON, individually and
in his capacity as Executive Director,
Independent Group Home of Long Island;
WILLIAM HERRICK, individually and in his
capacity as Quality Assurance Officer,
Independent Group Home of Long Island;
VICTOR TAYLOR, individually; GERALD HUBER,
individually; ROBERT LOPEZ, individually.

                Defendants.
-----------------------------------------X

APPEARANCES

For Plaintiff:                    Harriet A. Gilliam, Esq.
                                  Law Office of Harriet A. Gilliam
                                  P.O. Box 1485
                                  711 Union Avenue
                                  Riverhead, NY 11901

For Defendants:
ADD Defendants                    Lewis R. Silverman, Esq.
                                  Christopher James Soverow, Esq.
                                  Gerald Stephen Smith, Esq.
                                  Rutherford & Christie, LLP
                                  369 Lexington Avenue
                                  New York, NY 10017

IGHL, Inc., Stockton              David Charles Blaxill, Esq.
& Herrick                         Hardin Kundala McKeon & Poletto P.A.
                                  110 William Street
                                  New York, NY 10038

Taylor, Huber &                   Toni E. Logue, Esq.
Lopez                             NY State Attorney General's Office
                                  200 Old Country Road, Suite 460
                                  Mineola, NY 11501

IGHL's Board of                   No appearances.
Directors

SEYBERT, District Judge:

Plaintiffs Jean Romeo, individually and as the Administratix of the Estate of John Prodan and the Estate of John Prodan (together, "Plaintiffs") commenced this action on December 28, 2011 asserting claims arising out of Mr. Prodan's death while in the custody of Aid to the Developmentally Disabled, Inc. ("ADD"). Presently before the Court are Defendants Victor Taylor, Gerald Huber, and Robert Lopez's (collectively, the "State Defendants") motion to dismiss the Amended Complaint and Plaintiffs' cross-motion to file a Second

Amended Complaint. For the following reasons, the State Defendants' motion is GRANTED, and Plaintiffs' cross-motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

I.  Factual Background

John Prodan was born on July 16, 1951 and was diagnosed "as being mentally ill" in or around 1959. (Am. Compl. ¶¶ 43-44.) Mr. Prodan lived at home until March 1970, when he was admitted to the Long Island Developmental Center, a residential mental health facility. (Am. Compl. ¶ 45.) He remained a patient at the Long Island Developmental Center until March 30, 1984, when he was transferred to the Defendant Aid to the Developmentally Disabled, Inc. ("ADD"), another residential mental health facility, where he remained until his death on May 1, 2009. (Am. Compl. ¶¶ 14, 46, 84.)

On or around March 23, 1987, Mr. Prodan began receiving treatment at Defendant Individual Group Home Living Program, Inc.'s ("IGHL") Southampton Day Treatment Center (the "Center"). (Am. Compl. ¶ 47.) On December 2, 2009, Mr. Prodan fell while showering[2] at IGHL and was injured. (Am. Compl.

---

[1] The following facts are drawn from Plaintiffs' Amended Complaint ("Am. Compl.") and are presumed to be true for the purposes of this Memorandum and Order.

[2] The Amended Complaint asserts that Mr. Prodan was "being given a shower at the day program because he had such body odor due to

3

¶ 50.)[3]   An IGHL counselor at the Center contacted Defendant
Margaret Prokop, a registered nurse employed by ADD, and asked
ADD staff to meet Mr. Prodan at the Peconic Bay Medical Center.
(Am. Compl. ¶ 52.)   Nurse Prokop, however, insisted that Mr.
Prodan remain at IGHL and be returned to ADD at his regularly
scheduled time.   (Am. Compl. ¶¶ 52-53.)[4]   IGHL staff complied
with this request.   (Am. Compl. ¶ 53.)   IGHL did not investigate
Mr. Prodan's falling or report his injury to the Long Island
Developmental Disabilities Services Office ("LIDDSO") or to the
New York State Office of Mental Retardation and Developmental
Disabilities ("OMRDD") (now known as the Office of People with
Developmental Disabilities ("OPWDD")), as required under New
York's Mental Hygiene Law.   (Am. Compl. ¶ 83.)

        The following day, Mr. Prodan "was observed crying out
in pain that his back hurt."   (Am. Compl. ¶ 54.)   ADD staff was

---

the failure of the staff at the residential program at ADD, Inc.
to provide him with proper personal hygiene care."   (Am. Compl.
¶ 51.)

[3] The Court notes that Mr. Prodan allegedly fell more than seven
months <u>after</u> he died.   Obviously, one of the dates is incorrect.
This was raised by the State Defendants in their motion to
dismiss, yet Plaintiffs failed to correct this error in their
Proposed Second Amended Complaint.

[4] The Amended Complaint also refers to a "Defendant Prokan's"
involvement in this decision.   (<u>See,</u> <u>e.g.</u>, Am. Compl. ¶¶ 53-55.)
However, there is no Defendant Prokan in the caption or in the
section of the Amended Complaint listing and describing the
parties to the lawsuit.   This error also was not corrected in
the Proposed Second Amended Complaint.

notified but failed to take any action.  (Am. Compl. ¶ 54.)
Then, on December 4, 2009, Mr. Prodan "was exhibiting unusual
behavior, in that he had an episode of feces incontinence, he
was still complaining of back pain and he did not want to get
out of bed or eat breakfast."  (Am. Compl. ¶ 55.)  A member of
ADD's staff volunteered to take Mr. Prodan to the hospital;
however, Defendant Stacey Rohde, the Resident Manager[5] at ADD,
advised the staff-member to wait until Defendant James Philips
arrived.  (Am. Compl. ¶ 56.)  Mr. Philips was a direct care
counselor employed by ADD who was previously accused of pushing
Mr. Prodan into a wall and "detain[ing] him behind a blocked
door."  (Am. Compl. ¶¶ 31, 48.)  No action was ever taken
against Mr. Philips. (Am. Compl. ¶ 49.)

Later that day, Mr. Philips took Mr. Prodan to the
Peconic Bay Medical Center.  (Am. Compl. ¶ 57.)  Mr. Prodan
received a CAT scan, which revealed a laceration to his spleen.
(Am. Compl. ¶ 58.)  On December 5, 2009, he was transferred to
Stony Brook University Hospital for further testing, which

---

[5] Ms. Rohde's name is spelled incorrectly in the caption and
throughout the Amended Complaint as "Rhode" or "Rhodes."  (See
ADD Defs. Opp., Docket Entry 38, at 1 n.1.)  The Clerk of the
Court is directed to amend the docket to reflect the proper
spelling of Ms. Rohde's name, as reflected in the caption
herein.  Further, the caption of the Amended Complaint states
that Ms. "Rhode" was the Resident Manager, whereas paragraph 27
states that she was the Residential Manager.  These
inconsistencies were not corrected in the Proposed Second
Amended Complaint.

revealed that he had also fractured his spine. (Am. Compl. ¶ 59.) The doctors could not operate immediately, however, because Mr. Prodan was not strong enough to undergo surgery due to malnourishment. (Am. Compl. ¶ 60.) His surgery was postponed until December 7, 2009. (Am. Compl. ¶¶ 59-60.)

Defendant Sallyanne Burgess, ADD's Quality Assurance Officer, notified Plaintiff Romeo of Mr. Prodan's injury by letter dated December 7, 2009. (Am. Compl. ¶ 62.) Ms. Burgess attached a copy of a report prepared by OMRDD detailing Mr. Prodan's injury and the actions taken by ADD in response. (Am. Compl. ¶ 62.)[6] Mr. Burgess also advised Plaintiff Romeo that ADD was going to conduct a full investigation; however, no investigation ever took place. (Am. Compl. ¶¶ 64-65.)

Mr. Prodan was discharged from Stony Brook University Hospital on December 11, 2009, four days after his surgery, and he returned to ADD. (Am. Compl. ¶ 66.) The Amended Complaint asserts that Ms. Rohde "mislead [sic] [P]laintiff Romeo to belief [sic] that [D]efendant ADD, Inc. . . . had the staff and the means to provide care for [Mr. Prodan] following his surgery" and that Defendant Stephanie Bolognese, ADD's Nursing Coordinator, "negligently assessed the ability of the staff to

---

[6] The incident had been reported to OMRDD on December 5, 2009. (Am. Compl. ¶ 62.) The Amended Complaint asserts that it should have been reported on December 2, 2009. (Am. Compl. ¶ 62.)

provide the proper post-operative monitoring and care of [Mr.] Prodan." (Am. Compl. ¶ 67.)

ADD's staff failed to properly treat the wound site, and Mr. Prodan developed a serious infection. (Am. Compl. ¶ 71, 69.) Thus, he was readmitted to Stony Brook University Hospital on December 12, 2009, where doctors inserted two drains and a wound vac to help treat the infection. (Am. Compl. ¶ 69.) Mr. Prodan died on May 1, 2009, "cause of death being determined following an autopsy, as resulting from complications of fractures of spine attributed to a fall in the shower at his day treatment program where he sustained fractures of his spine." (Am. Compl. ¶ 84.)

The rest of the factual allegations in the Amended Complaint are somewhat contradictory. On the one hand, it alleges that ADD "never conducted a full investigation of the incident leading up to and resulting in [Mr. Prodan]'s fall in the shower at IGHL" or of "the reason that [Mr. Prodan] developed the infection." (Am. Compl. ¶¶ 65, 72.) On the other hand, it asserts that, "during the investigation of the incidents," ADD's Executive Director, Defendant Donald Reib "conspired with" Ms. Burgess, Ms. Rohde, and the State Defendants "to avoid liability and responsibility." (Am. Compl. ¶ 76.) State Defendants Gerald Huber and Robert Lopez are the Director and Assistant Director of LIDDSO, respectively, and

State Defendant Victor Taylor is employed by the New York State Commission on Quality Care and Advocacy for Persons with Disabilities. (Am. Compl. ¶¶ 37-39.)

II. <u>Procedural Background</u>

Plaintiffs commenced this action on December 28, 2011 and filed an Amended Complaint on February 13, 2012 asserting claims against ADD, ADD's Board of Directors, and ADD employees Mr. Reib, Ms. Burgess, Ms. Rohde, Ms. Bolognese, Mr. Philips, Nurse Prokop, and ADD's Program Director, Paula Wanat in their individual and official capacities (collectively, the "ADD Defendants"), against IGHL, IGHL's Board of Directors, IGHL's Executive Director, Walter Stockton, and IGHL's Quality Assurance Officer, William Herrick in their individual and official capacities (the "IGHL Defendants"), and against the State Defendants in their individual capacities. Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 against the ADD and State Defendants, claims for negligence against the ADD and IGHL Defendants, and claims pursuant to 42 U.S.C. §§ 1985, 1986 and the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801,[7] and for negligent and

_____

[7] The Court notes that Plaintiffs refer to PAIMI by its old title, the "Protection and Advocacy for Mentally Ill Individuals Act of 1986." (<u>See</u> Am. Compl. ¶ 2.) Congress amended the title in 2000. <u>See</u> <u>Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.</u>, 464 F.3d 229, 232 n.1 (2d

intentional inflition of emotional distress against all Defendants.

The ADD and IGHL Defendants (with the exception of IGHL's Board of Directors) answered the Amended Complaint and asserted cross-claims against their co-Defendants for contribution. The State Defendants have moved to dismiss. On September 17, 2012, Plaintiffs sought leave to file a Second Amended Complaint ("SAC").[8] Both motions are pending before the Court.

DISCUSSION

The Court will address the State Defendants' motion to dismiss first.

I.    The State Defendants' Motion to Dismiss

Plaintiffs have asserted the following claims against the State Defendants: (1) violation of Plaintiffs' due process rights under 42 U.S.C. § 1983; (2) conspiracy to violate Plaintiffs' constitutional rights under 42 U.S.C. § 1985; (3) failure to prevent a Section 1985 conspiracy under 42 U.S.C. § 1986; (4) violation of PAIMI; and (5) New York common law claims for negligent and intentional infliction of emotional

_____

Cir. 2006) (citing Pub. L. No. 106-310, 114 Stat. 1101, 1193-94 (Oct. 17, 2000)).

[8] Plaintiffs' initial motion papers were incomplete, and they submitted additional/corrected submissions on October 8 and 9, 2012.

distress.   The State Defendants move to dismiss the Amended Complaint and the ADD and IGHL Defendants' cross claims for failure to state a claim pursuant to Rule 12(b)(6).   The Court will briefly summarize the applicable standards of review before addressing the merits of the State Defendants' motion.

A.    Standard of Review under Rule 12(b)(6)

In  deciding  Rule  12(b)(6)  motions  to  dismiss,  the Court  applies  a  "plausibility  standard,"  which  is  guided  by "[t]wo  working  principles."   Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).   First, although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to  legal  conclusions;"  thus,  "[t]hreadbare  recitals  of  the elements  of  a  cause  of  action,  supported  by  mere  conclusory statements, do not suffice."   Iqbal, 556 U.S. at 678 (citing Twombly,  550 U.S. at 555); accord Harris, 572 F.3d at 72. Second,  only  complaints  that  state  a  "plausible  claim  for relief"  survive  a  motion  to  dismiss.   Id. at 679 (citing Twombly, 550 U.S. at 556).   Determining whether a complaint does so is "a context-specific task that requires the reviewing court to  draw  on  its  judicial  experience  and  common  sense."   Id.; accord Harris, 572 F.3d at 72.

B.   Due Process Claims

The Amended Complaint asserts claims against the State Defendants pursuant to 42 U.S.C. § 1983 for violating their substantive and procedural due process rights.   To establish a violation of either procedural or substantive due process, Plaintiffs must first identify a valid liberty or property interest.   Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994); Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001).   "Only if such an interest exists can there be a due process violation."   Toussie v. Suffolk Cnty., 806 F. Supp. 2d 558, 579 (E.D.N.Y. 2011).   Here, Plaintiffs allege that Mr. Prodan "had a cognizable life interest and liberty interest, to be able to be protected by State monitoring and oversight agencies that were charged with carrying out the State's mandate to enhance the quality of life of mentally disabled citizens of the State of New York and to protect them from abuse and violations of their statutory and constitutional rights." (Pls. Opp., Docket Entry 19, at 13.)   The State Defendants argue, inter alia, that this is not an interest protected by the Fourteenth Amendment.   The Court agrees.

First, although an individual confined in a state mental institution or facility has a protected interest in adequate medical care, safe conditions, and freedom from undue

bodily restraint, see Soc'y for Good Will to Retarded Children, Inc. v. Cuomo, 737 F.2d 1239, 1243, 1245 (2d Cir. 1984) (citing Youngberg v. Romeo, 457 U.S. 307, 315-16, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982)),[9] neither ADD nor IGHL--which are both private entities (Am. Compl. ¶¶ 13, 32)--are "state" institutions for the purposes of Section 1983.

For the purposes of Section 1983, the actions of a private entity are nonetheless attributable to the state when:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

---

[9] To the extent that Plaintiffs assert that Mr. Prodan had a cognizable interest in government protection generally, Plaintiffs fail to state a claim. "[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf--through incarceration, institutionalization, or other similar restraint of personal liberty--which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect [an individual's] liberty interests against harms inflicted by other means." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 200, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Id. at 195; see also Ying Jing Gan v. City of N.Y., 996 F.2d 522, 533 (2d Cir. 1993).

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (alterations in original) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001)). The Amended Complaint asserts that ADD and IGHL are state actors under the public function and close nexus tests. (Am. Compl. ¶¶ 14-15, 33.)

"Under the public function test, 'the exercise by a private entity of powers traditionally <u>exclusively</u> reserved to the [s]tate' can constitute 'state action.'" *Sybalski*, 546 F.3d at 259 (alteration in original) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974)). The Second Circuit has held, however, that the "care of the mentally ill, much less the mentally disabled" is not "a function traditionally and exclusively reserved by the state." *Id.* at 260 (internal quotation marks omitted). In fact, two courts in this District have expressly found that ADD and IGHL-- the same purported state actors here--are <u>not</u> state actors under the public function test solely because they assumed the duty to care for the mentally disabled. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, No. 06-CV-4899, 2007 WL 1202864, at *5 (E.D.N.Y. Apr. 24, 2007) (IGHL), <u>aff'd</u>, 546 F.3d 255 (2d Cir. 2008); *Russell v. Aid to Developmentally Disabled, Inc.*, No. 12-CV-0389, 2013 WL 633573, at *20 (E.D.N.Y. Feb. 20, 2013) (ADD).

Thus, the Court finds that the IGHL and ADD Defendants' conduct cannot be attributable to the state under the public function test.

Under the close nexus test, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982) (alteration in original) (internal quotation marks and citation omitted). Rather, there must be "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Id. (internal quotation marks and citation omitted); see also Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999) ("Whether such a 'close nexus' exists . . . depends on whether the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" (quoting Blum, 457 U.S. at 1004)). The Supreme Court instructs that the Court's analysis begin "by identifying the specific conduct of which the plaintiff complains." Am. Mfrs. Mut. Ins. Co., 526 U.S. at 51 (internal quotation marks and citation omitted).

As is relevant here, the Amended Complaint alleges that the ADD and IGHL Defendants subjected Mr. Prodan to cruel and harsh treatment, failed to provide adequate medical care, and failed to promptly and properly investigate allegations of wrongdoing in violation of New York statutory law. However, there is no indication that the State encouraged or permitted the use of excessive force, the disregard for patients' medical needs, or the failure to investigate and report incidents of abuse. To the contrary, New York's Mental Hygiene Law and related regulations provide a detailed scheme establishing (1) rights of individuals in mental health facilities and delegating "the responsibility" of "ensur[ing] that rights are not arbitrarily denied" to the individual facilities, N.Y. COMP. CODES R. & REGS. tit. 14 § 633.4; see also N.Y. MENTAL HYG. LAW § 33.02, and (2) procedures for investigating and reporting incidents of suspected harm or abuse, see N.Y. COMP. CODES R. & REGS. tit. 14 §§ 624.1-624.20; N.Y. MENTAL HYG. LAW § 31.11. Thus, it cannot be said that the State encouraged, either overtly or covertly, ADD and/or IGHL's failure to protect Mr. Prodan. See Sybalski, 546 F.3d at 258 ("While the state had established substantive rights for patients in mental health facilities and procedures for protecting these rights, those actions, without more, do not amount to significant encouragement, willful participation, or state entwining" in IGHL's decision to restrict one of those

15

rights).[10] Thus, the Court finds that neither ADD nor IGHL is a state actor for the purposes of Section 1983[11] and that Mr. Prodan, therefore, was not in the custody of the State while he was at ADD and/or IGHL's Center.

Accordingly, as Mr. Prodan was not being restrained by or in the custody of the State, he had no constitutional right

---

[10] See also, e.g., Lynn ex rel. Julie B. v. St. Anne Inst., No. 03-CV-1333, 2006 WL 516796, at *15 (N.D.N.Y. Mar. 2, 2006) (finding that a private facility that housed foster children was not a state actor, and thus not liable for alleged sexual abuse by an employee of a child placed there by the state, because "regardless of the source of funding or any state regulations, [the facility] used its own professional judgment in supervising the children in its care"--"[t]he state did not encourage [the employee]'s conduct and it similarly did not encourage, either overtly or covertly, [the facility]'s failure to prevent [the employee]'s sexual conduct with [the child]"); McGugan v. Aldana-Bernier, No. 11-CV-0342, 2012 WL 1514777, at *5-6 (E.D.N.Y. Apr. 30, 2012) (finding that a private hospital that civilly committed a patient pursuant to the Mental Hygiene Law was not a state actor because the Mental Hygiene Law "merely authorizes private physicians and hospitals to commit involuntary commitments yet leaves the decision of whether or not to commit to the professional discretion of the physicians" and "the private hospital did not consult or contact state employees regarding the evaluation or commitment of plaintiff nor did state officials participate in the commitment process in any way").

[11] Because they are not state actors, they cannot be held liable under Section 1983. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982) ("[T]he party charged with the [constitutional] deprivation must be a person who may fairly be said to be a state actor.") However, the ADD and IGHL Defendants have answered in lieu of moving to dismiss the Amended Complaint, and thus the Court cannot dismiss these claims at this time.

to protection by the government.[12]   Therefore, Plaintiffs have

failed to plead a protected property or liberty interest, and

their due process claims against the State Defendants

necessarily fail.

Second, to the extent that Plaintiffs assert that they

had a constitutionally protected interest in certain state-

mandated investigations, they also fail to state a claim,

because "[s]tatutory procedural requirements without a

separately articulable substantive right do not create a

constitutionally protected interest in liberty." Rudow v. City

---

[12] The Court notes that a state actor may be subject to liability
for failing to protect against action undertaken by private
actors in violation of the plaintiff's liberty or property
rights if the state actor "directed or aided and abetted the
violation." Dwares v. City of N.Y., 985 F.2d 94, 98 (2d Cir.
1993), overruled on other grounds by Leatherman v. Tarrant Cnty.
Narcotics Intelligence Coordination Unit, 507 U.S. 163, 113 S.
Ct. 1160, 122 L. Ed. 2d 517 (1993).  However, a state actor's
merely passive conduct--i.e. a "failure to intercede" or
"st[anding] by and d[oing] nothing"--"do[es] not amount to a
state-created danger and [is] thus insufficient to state a
substantive due process claim." Romero v. City of N.Y., 839 F.
Supp. 2d 588, 619-20 (E.D.N.Y. 2012) (quoting Pena v. DePrisco,
432 F.3d 98, 110 (2d Cir. 2005)) (internal quotation marks
omitted).  As here, the claims against the State Defendants
arise out of their failure to act--i.e., their passive conduct--
Plaintiffs have failed to state a claim under this theory of
relief.  See Pena, 432 F.3d at 110 ("A failure to interfere when
misconduct takes place, and no more, is not sufficient to amount
to a state created danger."); see also, e.g., Chambers v. N.
Rockland Cent. Sch. Dist., 815 F. Supp. 2d 753, 765-66 (S.D.N.Y.
2011) (finding that a school's failure to punish or confront a
student's assailants despite complaints regarding their
misbehavior and alleged under-reporting of incidents of violent
or disruptive behavior did not support a claim of a state-
created danger).

of N.Y., 822 F.2d 324, 330 (2d Cir. 1987); see also Holcomb v. Lykens, 337 F.3d 217, 224 (2d Cir. 2003) ("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures."); Concourse Rehab. & Nursing Ctr., Inc. v. DeBuono, 179 F.3d 38, 43 (2d Cir. 1999) ("[T]he failure of a State authority to comply with State regulations cannot alone give rise to a § 1983 cause of action.").

 As Plaintiffs have articulated no cognizable liberty or property interest, they have failed to state a due process claim under Section 1983.  Therefore, the State Defendants' motion to dismiss these claims is GRANTED.

 C.  Conspiracy Claims

 Plaintiffs allege two claims for conspiracy to interfere with Mr. Prodan's civil rights:  one pursuant to 42 U.S.C. § 1985(3) and one pursuant to 42 U.S.C. § 1986.

 To state a claim under Section 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

Thomas v. Roach, 165 F.3d 137, 1146 (2d Cir. 1999); see also
Morpurgo v. Inc. Vill. of Sag Harbor, 697 F. Supp. 2d 309, 339
(E.D.N.Y. 2010). Section 1985(3), however, "provides no
substantive rights itself but merely 'provides a remedy for
violation of the rights it designates.'" Spencer v. Casavilla,
903 F.2d 171, 174 (2d Cir. 1990) (quoting Great Am. Fed. Savings
& Loan Ass'n v. Novotny, 442 U.S. 366, 372, 99 S. Ct. 2345, 60
L. Ed. 2d 957 (1979)). Thus, as Plaintiffs have failed to plead
a violation of their constitutional rights, their Section 1985
claims must be dismissed. See O'Bradovich v. Vill. of Tuckahoe,
325 F. Supp. 2d 413, 426 (S.D.N.Y. 2004) ("In the absence of any
claim establishing a violation of civil rights, the court must
also dismiss claims of conspiracy brought under § 1985."); see
also Nasca v. Cnty. of Suffolk, No. 05-CV-1717, 2008 WL 53247,
at *8 n.8 (E.D.N.Y. Jan. 2, 2008) ("Because the Court has found
no constitutional violation exists, dismissal of the Section
1985 claim is warranted." (collecting cases)). Further,
"because a § 1986 claim must be predicated on a valid § 1985
claim," Brown v. City of Oneonta, N.Y., 221 F.3d 329, 341 (2d
Cir. 2000) (internal quotation marks and citation omitted),
Plaintiffs' Section 1986 claims must be dismissed as well.

Therefore, the State Defendants motion to dismiss
these claims is GRANTED.

D.  <u>PAIMI Claims</u>

Plaintiffs also claim that the State Defendants violated PAIMI and "thereby violated 42 U.S.C. [§] 1983." (Am. Compl. ¶¶ 128-30.) However, "while § 1983 may be used to enforce the rights guaranteed by certain federal statutes, PAIMI is not such a statute." <u>Sybalski</u>, 2007 WL 1202864, at *6 n.6 (stating that PAIMI "creates no privately enforceable federal rights") (citing <u>Maine v. Thiboutot</u>, 448 U.S. 1, 4, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980)). Accordingly, the State Defendants' motion to dismiss Plaintiffs' PAIMI claims is also GRANTED.[13]

E.  <u>State Common Law Claims</u>

Plaintiffs bring two state common law claims against the State Defendants: intentional infliction of emotional distress and negligent infliction of emotional distress.

The State Defendants argue that the intentional infliction of emotional distress claims must be dismissed as barred by the applicable statute of limitations. The Court agrees. Section 215(3) of New York's C.P.L.R. imposes a one-year statute of limitations on claims of intentional infliction of emotional distress, and the limitations period begins to run

---

[13] Although this argument was raised by the State Defendants in their motion to dismiss, Plaintiffs did not address it in their opposition papers. Thus, the Court also could have dismissed these claims as abandoned. <u>See</u> <u>McDonald v. City of N.Y.</u>, 786 F. Supp. 2d 588, 613 (E.D.N.Y. 2011).

on the date of injury. See Wilson v. Erra, 94 A.D.3d 756, 756, 942 N.Y.S.2d 127, 129 (2d Dep't 2012). Even assuming that Mr. Prodan died on May 1, 2010, see supra p. 3 and note 2, the statute of limitations expired on May 1, 2011. This action was commenced almost eight months later on December 28, 2011. Accordingly, the intentional infliction of emotion distress claim is dismissed as time-barred.

The State Defendants further argue that the negligent infliction of emotional distress claim must be dismissed for failure to state a claim. The Court agrees. To state a claim for negligent infliction of emotional distress under New York law, Plaintiffs must assert that they "suffer[ed] an emotional injury from defendant's breach of a duty which unreasonably endangered [their] own physical safety." Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996) (citing Kennedy v. McKesson Co., 58 N.Y.2d 500, 504, 462 N.Y.S.2d 421, 448 N.E.2d 1332 (1983)).[14] To the extent that Plaintiff Romeo seeks to recover individually, she has failed to state a claim, as the

---

[14] A plaintiff may also recover for negligent infliction of emotion distress under a "bystander theory," which requires a showing that the plaintiff was "threatened with physical harm as a result of defendant's negligence" and that she "suffer[ed] emotional injury from witnessing the death or serious bodily injury of a member of her immediate family." Id. However, as there are no allegations that Plaintiff Romeo was personally threatened with physical harm or actually witnessed Mr. Prodan's injury or death, the Amended Complaint fails to state a claim under this theory of liability.

Amended Complaint is devoid of any allegations that the State Defendants' failure to investigate "unreasonably endangered her own physical safety." Id.; see also Johnson v. N.Y.C. Bd. of Educ., 270 A.D.2d 310, 312, 704 N.Y.S.2d 281, 283 (2d Dep't 2000) ("Although physical injury is no longer a necessary element of a cause of action for negligent infliction of emotional distress, such a cause of action generally must be premised on conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety."); Blake v. Race, 487 F. Supp. 2d 187, 219 (E.D.N.Y. 2007). To the extent that Romeo and Mr. Prodan's estate seek to recover on behalf of Mr. Prodan, Plaintiffs have failed to plead that the State Defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Naughright v. Weiss, 826 F. Supp. 2d 676, 697 (S.D.N.Y. 2011) (quoting Shiela C. v. Povich, 11 A.D.3d 120, 130-31, 781 N.Y.S.2d 342 (1st Dep't 2004)) (internal quotation marks omitted); see, e.g., Romero, 839 F. Supp. 2d at 620, 631 (board of education's failure to report an incident of sexual abuse of a student to the police did not constitute "outrageous conduct" to support a claim for negligent infliction of emotional distress).

Accordingly, the State Defendants' motion to dismiss Plaintiffs' pendent state law claims is GRANTED.

## F. Co-Defendants' Cross Claims

The State Defendants also seek to dismiss the ADD and IGHL Defendants' cross claims for contribution. The ADD and IGHL Defendants have not opposed the State Defendants' motion to dismiss; accordingly, the Court DISMISSES these claims as abandoned.

## II. Plaintiffs' Motion to Amend

Plaintiffs seek leave to file a Second Amended Complaint ("SAC") that corrects the pleading deficiencies described above and adds new claims against the ADD and State Defendants, and possibly four new parties,[15] arising out of unsolicited communications received by Plaintiff Romeo from these parties in or around July and August 2012 regarding their belated investigation of Mr. Prodan's death. Specifically, Plaintiffs seek to add two ADD Defendants--Dawn Sagan, the current Quality Assurance Coordinator for ADD, and Theresa Ryder,[16] the ADD counselor who was assisting Mr. Prodan when he fell in the shower--and two State Defendants--Jonathan Pease and

---

[15] These new parties are not named in the caption of the SAC. They are named, however, in the section of the SAC listing and describing the parties to the action.

[16] The Court notes that Ms. Ryder's name is spelled incorrectly in Plaintiffs' moving papers and the SAC. (ADD Defs. Opp., Docket Entry 38, at 1 n.1.)

Thomas Holland, the Area and Regional Directors for the New York State Division of Quality Management ("DQM"). (SAC ¶¶ 32-33, 42-43.)

The Court will briefly discuss the factual allegations added in the SAC before addressing the merits of Plaintiffs' motion.

A. <u>New Facts Pled in the SAC</u>

On or around July 3, 2012, Ms. Sagan called Plaintiff Romeo to advise her that ADD was going to conduct an investigation of the incidents leading to Mr. Prodan's death. (SAC ¶ 93.) Ms. Sagan further advised Plaintiff Romeo that she had a right to request a meeting with ADD's Program Director, Defendant Paula Wanat, and to request additional information under New York's "Jonathan's Law,"--N.Y. MENTAL HYG. LAW §§ 33.23, 33.25. (SAC ¶ 93.) Plaintiff Romeo received written confirmation of her conversation with Ms. Sagan via three letters dated July 5, 2012. Attached to each letter was a "Report on Actions Taken," that detailed a separate allegation of neglect that was being investigated by ADD regarding services provided to Mr. Prodan prior to his death: (1) it was reported to New York's OPWDD on July 19, 2010 that ADD staff had "thrown John into a wall" on an unspecified date and time; (2) it was reported to OPWDD on July 6, 2010 that ADD staff "do[] not follow individual diets and individuals are then getting the

wrong food;" and (3) it was reported to OPWDD at an unknown date and time that ADD staff "are asked to sign fire drill logs but may not have been involved in the drills" (the "Reports"). (Pls. Mot. to Amend, Docket Entry 28, Exs. 1-6; SAC ¶ 94, 96-98.) The Reports indicated that DQM had conducted investigations of these incidents in 2010 but did not report them to ADD until May 16, 2012. (Pls. Mot. to Amend, Docket Entry 28, Exs. 2, 4, 6; SAC ¶ 94, 96-98.) The letters further indicated that Plaintiff Romeo had the right to request a meeting with ADD's Program Director and to request "information." (SAC ¶ 95; Pls. Mot. to Amend, Docket Entry 28, Exs. 1, 3, 5.)

Plaintiff Romeo sent Ms. Sagan a letter on or around July 18, 2012, requesting a meeting with ADD's Program Director requesting copies of all information available to her under Jonathan's Law, and "requesting a response as to why incidents concerning her brother were being investigated 21 months after the fact." (SAC ¶¶ 99-100.) Plaintiff Romeo sent copies of this letter to Ms. Wanat and to Mr. Pease, the Area Director of DQM. (SAC ¶ 99.) Ms. Sagan replied via letter dated August 8, 2012, stating that she "d[id not] believe it [was] appropriate for [them] to engage in conversation regarding the pending lawsuit," but that this "in no way infringed upon [her] rights as delineated in Jonathan's Law." (Pls. Mot. to Amend, Docket

Entry 28, Ex. 7.)  The letter continued:  "If you would like to exercise these rights, please submit requests in writing and I will readily comply.  However, if there are other questions or concerns, I again ask that your attorney direct these to the agency attorney . . . ."  (Pls. Mot. to Amend, Docket Entry 28, Ex. 7.)  Neither Ms. Wanat or Mr. Pease responded to Plaintiff Romeo's letter.  (SAC ¶¶ 102-03.)

Plaintiff Romeo sent Ms. Sagan another letter dated August 14, 2012--the content of which is not specified in the SAC.  (See Pls. Mot. to Amend, Docket Entry 28, Ex. 8.)  Ms. Sagan responded via letter dated August 17, 2012, which stated in relevant part as follows:

> Let me begin by stressing that we are not attempting to limit, in any way, your statutory rights under Jonathan's Law.  I also must note that your prior correspondence did not request any meeting.  In any event, we have forwarded your letters to our attorney, who will be providing a response to your letter dated August 14, 2012.

(Pls. Mot. to Amend, Docket Entry 28, Ex. 8; SAC ¶ 104.) Plaintiff Romeo never received any response from ADD's counsel, nor did she receive any further response from ADD.  (SAC ¶ 105.)

Plaintiff Romeo did, however, receive a letter from Mr. Holland--DQM's Regional Director--on behalf of Mr. Pease in response to her July 18 and August 14, 2012 letters.  (Pls. Mot.

to Amend, Docket Entry 28, Ex. 10; SAC ¶ 106.)  Mr. Holland's
letter stated, in relevant part, as follows:

> Please be advised that because the lawsuit
> you commenced against OPWDD remains ongoing
> at the present time, I am not permitted to
> comment on any matters pertaining to the
> same.  Contrary to your understanding
> otherwise, Jonathan's Law (Mental Hygiene
> Law Sections 33.23 and 33.25) does not
> entitle you to the information you seek nor
> a meeting with ADD.  The law pertains only
> to the disclosure of records.  It provides
> that they may be disclosed only to a
> qualified person as defined by Mental
> Hygiene Law Section 33.16.  Such persons do
> not include an Administratrix of the estate
> of an individual which is your status.

(Pls. Mot. to Amend, Docket Entry 28, Ex. 10.)

Plaintiff Romeo asserts that "[t]o date," she has not
"been afforded an opportunity to meet with" Ms. Wanat or any
other ADD representative "in her capacity as [Mr. Prodan]'s
sister," nor has she received any information or explanation as
to "what happened to her brother" or the results of the ADD's
investigations.  (SAC ¶ 107.)

The SAC reasserts each and every claim pled in the
first Amended Complaint and seeks to add the following new
claims:  (1) substantive and procedural due process claims under
Section 1983 against ADD, Mr. Reib, Ms. Wanat, Ms. Burgess, Ms.
Rohde, and Ms. Sagan arising out of their denial of Plaintiff's
statutory rights under Jonathan's Law (SAC ¶¶ 168-71); (2)
substantive and procedural due process claim under Section 1983

against Mssrs. Pease and Holland, arising out of their determination that Plaintiff Romeo was not entitled to a meeting with Ms. Wanat thereby denying her statutory rights under Jonathan's Law (SAC ¶¶ 172-76); (3) a claim under Section 1983 against the ADD Defendants, the State Defendants, Ms. Sagan, and Mssrs. Pease and Holland for conspiring to violate Plaintiffs' statutory rights under Jonathan's Law (SAC ¶¶ 177-83); and (4) a negligence claim against the ADD Defendants and Ms. Sagan arising out of their breaching their "duty to investigate and file the incidents of abuse identified in the July 3, 2012 and July 5, 2012 correspondence within the timeframes established by the OPWDD regulations" (SAC ¶¶ 184-87). The SAC also adds Ms. Ryder to the negligence claim pled in the first Amended Complaint, arising out of her failure to ensure that Mr. Prodan received prompt and adequate medical attention. (SAC ¶ 127.)

The Court will first summarize the applicable standard of review; then it will address Plaintiffs' new federal and state claims in that order.

B.  Standard of Review

Courts should grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). To

determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal, 282 F.3d 83, 88 (2d Cir. 2002).

Thus, to the extent that Plaintiffs seek to replead the claims against the State Defendants that the Court has already dismissed, Plaintiffs' motion is DENIED because the SAC contains no new factual allegations that would alter the Court's analysis above. Whether Plaintiffs have adequately pled new causes of action based on these additional facts warrants further discussion.

C.  Section 1983 Claims

Plaintiffs' new Section 1983 claims fail for the same reason as the Section 1983 claims in the first Amended Complaint: Plaintiffs failed to plead a cognizable property or liberty interest. All of the Section 1983 claims pled in the SAC arise out of Plaintiffs' purported rights to certain procedures and investigations under New York's Mental Hygiene Law. However, as the Supreme Court has repeatedly stated: "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim to entitlement." Olim v. Wakinekona, 461 U.S. 238, 250, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983); accord Town

of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 771, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005). And while "[a]n agency's failure to follow its own rules may be significant in administrative law, . . . the federal Due Process Clause does not incorporate the particular procedural structures enacted by state or local governments; these claims should be pursued, if at all, under [state] law." Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 10 (1st Cir. 2003).

Thus, to the extent that Plaintiffs seek to plead new Section 1983 due process and conspiracy claims, their motion is DENIED.

D.    Negligence Claims

Plaintiffs also seek to add Ms. Ryder to the existing negligence claim against the ADD Defendants arising out of her failure to ensure Mr. Prodan's health and safety, and to assert a new negligence claim against the ADD Defendants and Ms. Sagan arising out of their failure to promptly and properly investigate the alleged incidents of neglect related to Mr. Prodan.

1.    Claim Against Ms. Ryder Regarding Her Failure to Seek Prompt Medical Attention

The ADD Defendants argue that Plaintiffs' negligence claim against Ms. Ryder arising out her failure to seek prompt medical attention for Mr. Prodan's injuries is barred by the

applicable statute of limitations.  Section 5-4.1 of New York's
Estate, Powers and Trusts Law provides that:

> The personal representative, duly appointed
> in this state or any other jurisdiction, of
> a decedent who is survived by distributees
> may maintain an action to recover damages
> for wrongful act, neglect or default which
> caused the decedent's death against a person
> who would have been liable to the decedent
> by reason of such wrongful conduct if death
> had not ensued.  Such an action must be
> commenced within two years after the
> decedent's death . . . .

N.Y. EST. POWERS & TRUSTS § 5-4.1(1).  Thus, the ADD Defendants
argue that the statute of limitations expired on May 1, 2011--
two years after his death and almost eight months before
Plaintiffs commenced this action.  While this is a correct
statement of the law if Plaintiffs were asserting a claim for
wrongful death, the Court reads the first Amended Complaint and
Proposed Second Amended Complaint as also asserting claims for
personal injuries, which are governed by the three-year statute
of limitations in N.Y. C.P.L.R. 214(5).

"A cause of action for conscious pain and suffering is
separate and distinct from one for wrongful death and is
distinguished by whether the damages have been sustained by the
distributees or the decedent."  Lancaster v. 46 NYL Partners,
228 A.D.2d 133, 138, 651 N.Y.S.2d 440, 444 (1st Dep't 1996).

> A personal injury action is for conscious
> pain and suffering of the decedent prior to
> his death. This contrasts with a wrongful

death action for pecuniary injuries resulting from decedent's death and certain expenses. The recovery for conscious pain and suffering accrues to the decedent's estate, whereas the damages for wrongful death are for the benefit of the decedent's "distributees" who have suffered "pecuniary injury." The claims are thus predicated on essentially different theories of loss which accrue to different parties.

Id. (quoting Ratka v. St. Francis Hosp., 44 N.Y.2d 604, 609, 407 N.Y.2d 458, 460, 378 N.E.2d 1027, 1030 (1978)).

As here, Plaintiffs are seeking to recover for Mr. Prodan's pain and suffering prior to his death, their claim is governed by the three-year statute of limitations in N.Y. C.P.L.R. 214(5) and is thus timely. Accordingly, Plaintiffs' motion to amend to add a negligence claim against Ms. Ryder is GRANTED.

2. Claims Against the ADD Defendants and Ms. Sagan Regarding Their Failure to Investigate

Plaintiffs are also seeking leave to plead a new negligence claim against the ADD Defendants and Ms. Sagan arising out of their failure to promptly report and/or investigate the alleged incidents of neglect. The ADD Defendants argue that such a claim would be futile because the SAC only seeks damages on this claim for Plaintiff Romeo's emotional injuries and such claims are precluded under New York law. Plaintiffs, however, have failed to respond to this argument in their reply brief, and thus the Court deems their

request to plead this negligence claim abandoned.  See <u>Anti-Monopoly, Inc. v. Hasbro, Inc.</u>, 958 F. Supp. 895, 907 n. 11 (S.D.N.Y.) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), <u>aff'd</u>, 130 F.3d 1101 (2d Cir. 1997).  Accordingly, their motion to amend to plead this claim is DENIED.

CONCLUSION

For the foregoing reasons, the State Defendants' motion to dismiss is GRANTED, and Plaintiffs' motion(s) to amend is GRANTED IN PART and DENIED IN PART.  The SAC shall be the operative complaint to the extent that it asserts the following claims <u>only</u>:  (1) due process claims under Section 1983 against the ADD Defendants; (2) excessive force claims under Section 1983 against the ADD Defendants; (3) a negligence claim against the ADD Defendants and Ms. Ryder; (4) a negligence claim against the IGHL Defendants; (5) a Section 1985 conspiracy claim against the ADD and IGHL Defendants; (6) a Section 1986 claim against the ADD and IGHL Defendants; (7) PAIMI claims under Section 1983 against the ADD and IGHL Defendants; (8) a negligent infliction of emotional distress claim against the ADD Defendants; and (9) an intentional infliction of emotional distress claim against the ADD and IGHL Defendants.  If the ADD and IGHL Defendants intend to move to dismiss the federal claims in the SAC, formal briefing is not required.  Given the law-of-the-case doctrine

and the Court's findings in this Memorandum and Order, a short letter motion will do.

The Clerk of the Court is directed to: (1) amend the docket to correct the spelling of Ms. Rohde's name; (2) add Theresa Ryder as a Defendant; (3) terminate Victor Taylor, Gerald Huber, and Robert Lopez as Defendants and Cross-Defendants; and (4) docket the document at Docket Entry 35-3 as a separate docket entry, titled "Second Amended Complaint," and dated the date of this Memorandum and Order.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    March 22, 2013
          Central Islip, NY